IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION

| | | |
|---|---|---|
| JOSEPH SMITH, | § | |
| | § | |
| *PLAINTIFF*, | § | |
| v. | § | CASE NO. 2:14-cv-00666-JRG |
| | § | |
| ORBCOMM, INC., and STARTRAK | § | |
| INFORMATION TECHNOLOGIES, LLC | § | JURY TRIAL REQUESTED |
| | § | |
| *DEFENDANTS.* | § | |
| | § | |

# PLAINTIFF JOSEPH SMITH'S REPLY IN SUPPORT OF HIS OPENING CLAIM CONSTRUCTION BRIEF

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. iii

A.        inputs to be controlled ['686 patent claims 15 and 48]...........................................1

B.    outputs…operable to be controlled/
      outputs to be controlled ['686 patent claims 15 and 48].......................................10

CONCLUSION...........................................................................................................15

CERTIFICATE OF SERVICE ......................................................................................16

# TABLE OF AUTHORITIES

<u>**Cases**</u>

*Bancorp Servs., LLC v. Hartford Life Ins. Co.*,
  359 F.3d 1367, 1371 (Fed. Cir. 2004) ........................................................................ 9

*CBT Flint Partners, LLC v. Return Path, Inc.*,
  654 F.3d 1353 (Fed. Cir. 2011).............................................................................. 4, 5

*Fairfield Industries, Inc. v. Wireless Seismic, Inc,*
  2015 U.S. Dist. LEXIS 28870 (S.D. Tex. Mar. 6, 2015) ...................................... 5, 6

*Fujitsu Ltd. v. Tellabs Operations, Inc.*,
  2011 WL 1303358 (N.D. Ill. Mar. 31, 2011) ........................................................... 6

*Group One, Ltd. v. Hallmark Cards, Inc*.,
  407 F.3d 1297, 1303 (Fed Cir. 2005) ....................................................................... 6

*Haemonetics Corp. v. Baxter Healthcare Corp.*,
  607 F.3d 776, 783 (Fed. Cir. 2010) ........................................................................ 10

*Intergraph Hardware Techs. Co. v. Hewlett-Packard Col.*,
  2004 U.S. Dist. LEXIS 31055 (E.D. Tex. July 1, 2004) .......................................... 6

*Imperium (IP) Holdings, Inc. v. Apple, Inc.*,
  920 F. Supp. 2d 747 (E. D. Tex. 2013) ................................................................. 6, 7

*I.T.S. Rubber Co. v. Essen Rubber Co.*,
  272 U.S. 429, 442-43, 47 S. Ct. 136, 71 L. Ed. 335, 127 Dec. Comm'r Pat. 228 (1926)  ..... 8, 9

*Kaufman Co. v. Lantech, Inc.*,
  807 F.2d 970 (Fed Cir. 1986) ................................................................................... 9

*Nautilus, Inc. v. Biosig Instruments, Inc.*,
  134 S. Ct. 2120, 2124 (U.S. 2014) ........................................................................... 9

*Novo Indus. L.P. v. Micro Molds Corp.*,
  350 F.3d 1348 (Fed Cir. 2003)............................................................................... 1, 4

*SourceProse Corp. v. AT&T Mobility, LLC*,
  2014 U.S. Dist. LEXIS 87194 (W.D. Tex. June 24, 2014)....................................... 5

*WhatsApp, Inc. v. Intercarrier Communications, LLC*,
  2014 U.S. Dist. LEXIS 148063, at * 26  (N.D. Cal. Oct. 16, 2014) ......................... 9

Pursuant to the Court's Docket Control Order (Dkt. #17) and P.R. 4-5(c), Plaintiff Joseph

Smith ("Plaintiff" or "Smith") submits this Reply in support of his Opening Claim Construction

Brief (Dkt #22) and in response to Defendants ORBCOMM, Inc. ("ORBCOMM") and StarTrak

Information Technologies, LLC's ("STIT") (collectively "Defendants") Responsive Claim

Construction Brief (Dkt. #25).

A.    **"INPUTS TO BE CONTROLLED" ['686 PATENT CLAIMS 15 AND 48]**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|---|---|---|
| inputs to be controlled | The Court should correct to "inputs to be monitored." | Indefinite (per Dkt. #25, Responsive Claim Brief") |

The Court should find that claims 15 and 48 contain a typographical error, and that the

phrase "inputs to be controlled" should be construed to read "inputs to be monitored."[1]  The

correction of an obvious clerical error based on the Examiner's undisputed intent is an

appropriate exercise of the Court's inherent authority to construe claim terms and when

necessary correct clerical errors consistent with the plain and unequivocal meaning of the patent.

*See Novo Indus. L.P. v. Micro Molds Corp.*, 350 F.3d 1348 (Fed Cir. 2003).

Here, a plain reading of the '686 patent, along with prosecution history, make it evident

that there is an obvious clerical error in claims 15 and 48.   The Examiner required that the '686

patent claims recite the limitation that the "inputs/variables" were "to be monitored" and that the

"outputs/items" were "to be controlled."   The prosecution history shows that the Examiner's

intent to include this limitation in all of the independent claims was clear and unequivocal:

> All independent claims, claims 1, 3, 15, 29, and 48, *have been amended to clarify*
> that one common database, located in a network server, stores all configuration
> definitions of the more or more configurable interfaces located between the one or
> more monitoring devices and the monitoring device's associated targets.   The

---

[1] Alternatively, the Court should construe the disputed claim language "to be controlled" to refer to the definition data.  This is the construction initially proposed by Plaintiff Smith.  The specification and the prosecution history clearly show that the definition data controls both the inputs and outputs—"database comprises definitions of said inputs to be monitored".   This proposed construction does not change meaning or claim scope in anyway whatsoever.  It leads to the exact same claim scope as correction of the phrase "to be controlled" as a clerical mistake.

stored information includes: the selected ports for connections, the *inputs/variable to be monitored*, and the *outputs/items to be controlled*.

Exhibit D at 3.[2] (emphasis added).  This was the Examiner's language, not the patentee's language.  The Examiner amended the claims to include these phrases.

As the Court noted in its vacated Claim Construction Memorandum and Opinion in the companion case, the terms "to be monitored" and "to be controlled" were included in the original claim 3, which recited "said plurality of targets having at least first and second variables to be monitored and having at least first and second items to be controlled."  Claim 3 was amended to provide "a <u>common</u> database of network server to define said first and second variables <u>to be monitored and said first and second items to be controlled</u> whereby said definition data selectively varies between said plurality of targets, said definition data stored in common database. . . ."  Exhibit D at 5-6 (emphasis in original); '686 Patent Reexamination Certificate, Exhibit A at 2:14-20.   Independent claim 29 was amended in a similar manner:

> each wireless communication unit comprising a transceiver for two-way communication with said wireless network system related to a plurality of [control] <u>inputs to be monitored</u> and [said] a plurality of [status] outputs <u>to be controlled</u> of said target, a <u>plurality of ports for selective wiring of</u> <u>inputs to be monitored</u> <u>and said outputs to be controlled between said wireless communication unit and said target</u>;
>
> <u>wherein said common database comprises definitions of</u> <u>said inputs to be monitored</u>, <u>said outputs to be controlled and said selective wiring of said plurality of ports</u>;

Exhibit D at 6 (underline emphasis in original, highlighting added); Exhibit A at 5:6-17 (emphasis added, highlighting added).

For independent claims 15 and 48, similar amendments were made consistent with the Examiner's intent to change all claims in this manner.  Specifically, the amendments initially

---

[2] A true and correct of USPTO Notice of Intent to Issue *Ex Parte* Reexamination Certificate, dated December 13, 2010, filed in *Ex Parte* Reexamination Control 90/009,121, is attached as Exhibit D and incorporated herein by reference.

reference "one or more inputs . . . operable for monitoring," but then ultimately state "said one or more inputs to be controlled":

> said plurality of wireless communication units each comprising a selectable port wiring interface for selective wiring of each of said plurality of wireless communication units to said plurality of targets whereby one or more inputs to said wireless communication units are operable for monitoring by a respective of said plurality of client computers and one or more outputs for said wireless communication units are operable to be controlled by said respective of said plurality of client computers; and

> said common database being configured for storing definition information for said plurality of wireless communication units comprising definitions of said one or more inputs to be controlled, said one or more outputs to be controlled and said selective wiring of said selectable port wiring interface for said plurality of wireless communication units.

Exhibit D at 11-12, 20-22 (underline emphasis in original, highlighting added); Exhibit A at 3:27-44; 6:45-61 (underline emphasis in original, highlighting added).  This evidences a simple clerical transposition of the phrase "to be controlled", and this is clear from the face of the patent.

The Examiner's intent to require a global amendment of all independent claims as described above is undisputed.  When the Examiner issued the amended claims, those claims inadvertently contained the phrase "to be controlled" phrase after the term "inputs" in claims 15 and 48, when the Examiner intended the phrase "to be controlled" to follow "outputs" and "to be monitored" to follow "inputs".  As shown above, the term "inputs" appears only twice in claims 15 and 48.  The phrase "said one or more inputs" in claims 15 and 48 is referring to the "one or more inputs" introduced in the initial phrase "whereby one or more inputs to said wireless communication unit are operable for monitoring."   Given the Examiner's intent, it then follows that the substitution of inputs "to be controlled" for inputs "to be monitored" is an obvious clerical error which is clear from the face of the '686 patent.  This conclusion is then supported by and consistent with the patent claims, the specification and the prosecution history.

A court may correct errors in a patent if "(1) the correction is not subject to reasonable debate based on consideration of the claim language and the specification and (2) the prosecution history does not suggest a different interpretation of the claims." *Novo Indus.* 350 F.3d at 1354. There is "reasonable debate" only if multiple, competing interpretations of the claims are supported by the specification and claims, and those multiple interpretations suggest differing claim scope. *CBT Flint Partners, LLC v. Return Path, Inc.*, 654 F.3d 1353 (Fed. Cir. 2011). Here there is no competing interpretation that suggests differing claim scope.

In *CBT Flint Partners,* the plaintiff appealed from a final judgment holding that a patent claim was indefinite because the disputed claim contained a "drafting error."  In granting summary judgment, the trial court found that there were at least three reasonable and possible corrections to rectify that drafting error, and that on consideration of the claim language and specification, the appropriate correction was subject to reasonable debate.  654 F.3d at 1356. The trial court, therefore, concluded that it was not authorized to correct the drafting error, thereby rendering the claim invalid for indefiniteness.  *Id.* at 1356.

The Federal Circuit reversed the district court and found that the claim was not indefinite. 654 F.3d at 1358.  Specifically, the Federal Circuit concluded that the district court failed to recognize that a person of skill in the art would find the claim to have the same scope and meaning under each of the three possible meanings advanced by the parties.  *CBT Flint Partners*, 654 F.3d at 1358-59.  So while there were multiple reasonable interpretations, all reasonable interpretations resulted in the same claim scope. "Because each of the three proposed reasonable interpretations would result in the same claim scope, requiring that the computer be programmed to 'detect and analyze' the e-mail, a person of skill in the art would readily know that the meaning of the claim requires insertion of the word 'and' between the words 'detect' and 'analyze.'"  *Id.* at 1359-60.  By correcting the clerical error in *CBT Flint Partners*, the district

4

court would not in any real sense be "re-making" the claim, but merely giving it the meaning which was intended. *Id.* at 1359-60. Accordingly, the Federal Circuit reversed the district court's summary judgment of invalidity. *Id.* at 1361. *See, e.g., SourceProse Corp. v. AT&T Mobility, LLC,* 2014 U.S. Dist. LEXIS 87194 (W.D. Tex. June 24, 2014) (judicially correcting the claim dependency based on surrounding claims, specification, and prosecution history).

In *Fairfield Industries, Inc. v. Wireless Seismic, Inc.*, the trial court cited the Federal Circuit's opinion in *CBT Flint Partners* when it held that although an error in a patent claim could be corrected in two ways, "the mere fact that multiple reasonable corrections exist does not prevent the [c]ourt from correcting the term." 2015 U.S. Dist. LEXIS 28870, *52-53 (S.D. Tex. Mar. 6, 2015) (citing *CBT Flint Partners*, 654 F.3d at 1358-59). In *Fairfield*, the defendant argued that the court did not have authority to correct a patent claim's typographical error because that error could be corrected in multiple ways. *Id.* at *51. The patent's claim 5 was dependent on claim 1 which did not mention an antenna. Claim 5 stated that the "transmission system of claim 1, wherein said antenna is molded into the casing." *Id.* at *51. The defendant contended that the patent contained an obvious error because claim 1 provided no antecedent basis for the term "said antenna." *Id.* at *51-52.

The court found that either interpretation of the disputed claim term would have the same claim scope as understood by a person skilled in the art. *Id.* at *53. In rejecting the defendant's arguments and correcting the typographical error, the court held that "[w]hen viewed from the perspective of one skilled in the art, the specification provides sufficient support for a singular reading of the claim term. Neither [the] [c]ourt nor a person of skill in the art is required to guess at which meaning was intended in order to make sense of the claim." *Id.* at *54 (citing *CBT Flint Partners*, 654 F.3d at 1360). The court further held that the disputed term was not indefinite "because, in light of the specification language . . ., one of skill in the art would be

reasonably certain as to the claim's scope." *Id.* at *55. *See Fujitsu Ltd. v. Tellabs Operations, Inc.*, 2011 WL 1303358 at *11 (N.D. Ill. Mar. 31, 2011) (adopting patentee's correction because "the alternative interpretations offered by [defendant] are not reasonable in light of extrinsic evidence"); *see also Intergraph Hardware Techs. Co. v. Hewlett-Packard Col.*, 2004 U.S. Dist. LEXIS 31055 (E.D. Tex. July 1, 2004) (claim term not indefinite because only reasonable interpretation supported by specification was to judicially remove the erroneous "the").

The cases cited by Defendants are readily distinguishable from the facts here. *In Group One, Ltd. v. Hallmark Cards, Inc.*, 407 F.3d 1297, 1303 (Fed Cir. 2005), the Federal Circuit held that the court would not correct an error that was not evident on the face of the patent. Due to amendments made during prosecution, the patent should have read: "stripping means [36] for separating the ribbon from said mechanical drive wheel means *in order to prevent said ribbon from adversely affecting operation of said mechanical drive wheel means by adhering to said mechanical drive wheel means."* The emphasized language was omitted from the patent claim. Although the prosecution history disclosed that the examiner required that the missing language be added as a condition of issuance, the court could not determine what language was missing simply by reading the patent. Nothing in the surrounding claim language, in the patent's other claims, or the specification indicated that the missing language had been omitted. *Id*. at 1302-03. By contrast here, the clerical error is obvious from the face of the patent. The patent consistently references input for monitoring. As a result, the correction is not subject to reasonable debate based on the claim language, specification, and prosecution history.

The Defendants rely on *Imperium (IP) Holdings* in support of their position that the *Novo Industries* standard has not been met here, but the facts in that case differ materially from those here. As a result, this Court's holding in *Imperium* is distinguished from the case at bar. In *Imperium*, the Court declined to correct a patent to change "red pixel" to "red pixels" because the

6

discrepancy between "pixel" and "pixels" appeared multiple times throughout the disputed claim, including references to "red pixels," blue pixels", "first green pixels," and "second green pixels"; the patent referred to a singular "red pixel" in an another claim; and the proposed correction conflicted with the specification. *Imperium (IP) Holdings, Inc. v. Apple, Inc.*, 920 F. Supp.2d 747, 757-58 (E.D. Tex. 2013).   In that case, the Court found that "the apparent discrepancy is subject to reasonable debate" and that claim scope is not "discernable" to one of skill in the art. *Id.* at 759.  As pointed out by the Court in its opinion, the multiple interpretations led to possible differences in claim scope, including whether an analog to digital converter was connected to the output of a single red pixel or to some group of pixels, and whether the converter converted the outputs of a red pixel over multiple frames or converted the outputs of a group of red pixels for a single frame. *Id.* at 758-59  By contrast here, there is no reasonable debate over claim meaning, and there are not differing interpretations that would lead to differing claim constructions.  The term "inputs" is used consistently throughout the patent and the prosecution history.

Defendants argue that Smith offered an alternative construction, and thereby demonstrated that that the claim term was subject to more than one construction.  But Plaintiff's proposed interpretation does not change claim meaning in any way.  Plaintiff's counsel pointed that out during argument in the companion case and in his response to Defendant SkyBitz's motion for reconsideration. Plaintiff simply argued that one possible observation is that the phrase "to be controlled" refers to definition information, emphasizing that the definition information in the database controls the I/O devices.  The fact that the definition information controls components of the system (including the I/O interfaces) is not controversial.  Looking at the phrase in this way does not impact the meaning of the claim.  A skilled artisan would understand the claims to mean the exact same thing.  This is true whether the language "to be

controlled" is left in place, corrected as clerical mistake to "operable for monitoring", or even if it were taken out altogether. Smith's ultimate point is that it does not make any difference. Either way, "There would be no substantive confusion [among skilled artisans] about what the – what the claims are". *Markman* Hearing Transcript at 29.

Defendants have misstated Smith's position on the issue of definiteness and overstate their own argument. Smith never said that there was "no error in the claims." In his *Markman* brief in the companion case, Smith argued that it did not matter whether the language "to be controlled" after "input" was changed to "operable for monitoring", viewed as modifying definition data, or event taken out altogether because the meaning stayed the same regardless. There would still be no debate among skilled artisans as to claim scope. *Honeywell,* Dkt. #39 at 13-21. The patent, its specification, and the prosecution history were clear and consistent on the terms "inputs" and "outputs." At the claim construction hearing, Smith argued that if the phrase "to be controlled" after the term "input" were a clerical error, it had no effect on the meaning, and that would explain why neither the examiner nor the patentee caught the error. *Markman* Hearing Transcript at 28:8-29:4.

This is not a case that involves a proposal to correct an incomplete phrase or an attempt to add some unknown missing word. This case is akin to *I.T.S. Rubber Co. v. Essen Rubber Co.*, 272 U.S. 429, 442-43, 47 S. Ct. 136, 71 L. Ed. 335, 127 Dec. Comm'r Pat. 228 (1926) where the Court held that an error may be found in a single claim where the patent examiner's remarks and surrounding language demonstrate that an error exists in the claim language. In *Essex*, the Court found a single error where the claim described an "upper edge" and the surrounding claims described a "rear upper edge." *Id.* at 441. During prosecution, the patent examiner had stated that "'each of the claims 5, 6, 7, 8, and 9' specified a plane tangent to the 'rear upper edge and the breast corner.'" *Id.*. The Court noted that if applicant's counsel had intended to differentiate

this claim from the others by omitting the word "rear", he would have spoken up instead of allowing the examiner to pass upon the claim under a misapprehension as to its language. *Id.* As the Court stated, "[the correction] is not in any real sense, a re-making of the claim; but is merely giving to it the meaning which was intended by the applicant and understood by the examiner." *Id.* at 442.

Defendants argue that the term "inputs to be controlled" has no support in the '686 patent. While this is not true because the patent describes "inputs" and "outputs" being controlled by the definition data, it is true that the '686 patent specification does not use the phrase "inputs to be controlled." Instead, as discussed above, the '686 patent consistently uses the phrases "inputs to be monitored" and "inputs . . . operable for monitoring," which demonstrates that use of the phrase "inputs to be controlled" was an obvious clerical error.

A challenge to the validity of any patent claim, whether regularly issued or as here, issued after reexamination, must meet the clear and convincing standard of persuasion. *Kaufman Co. v. Lantech, Inc.*, 807 F.2d 970, 973-4 (Fed Cir. 1986). On the legal issue of definiteness, the determinative question is whether one of skill in the art would understand the scope of the invention. *Nautilus, Inc. v. Biosig Instruments, Inc.*, 134 S. Ct. 2120, 2124 (U.S. 2014). "One must bear in mind, moreover, that patents are 'not addressed to lawyers, or even to the public generally,' but rather to those skilled in the relevant art." *Id.* at 2128 (internal citations omitted). "In undertaking this inquiry, the [c]ourt accords 'respect to the statutory presumption of validity. [. . .] Close questions of indefiniteness are therefore properly resolved in favor of patentee." *WhatsApp, Inc. v. Intercarrier Communications, LLC*, 2014 U.S. Dist. LEXIS 148063, at * 26 (N.D. Cal. Oct. 16, 2014) (citing *Bancorp Servs., LLC v. Hartford Life Ins. Co.*, 359 F.3d 1367, 1371 (Fed. Cir. 2004)). "The ultimate issue is whether someone working in the relevant technical

field could understand the bounds of a claim." *Haemonetics Corp. v. Baxter Healthcare Corp.*, 607 F.3d 776, 783 (Fed. Cir. 2010)).

On that ultimate question, the '686 patent claims, read in light of the specification delineating the patent, and the prosecution history, reasonably informs those skilled in the art about the scope of the invention. Defendants have offered nothing to show that skilled artisans would not understand the scope or meaning of the claim terms. In fact, Defendants did not assert that the term "inputs to be controlled" was indefinite and incapable of construction until they filed their responsive claim construction brief two weeks ago.[3] Up until that time, Defendants' skilled artisans believed that they understood the claims.[4]

**B.     outputs…operable to be controlled / outputs to be controlled ['686 patent claims 15, 29 and 48]**

| Term | Plaintiff's Proposed Construction | Defendants' Proposed Construction |
|------|-----------------------------------|-----------------------------------|
| outputs…operable to be controlled / outputs to be controlled | "signals provided from the wireless communication unit via a wired electrical connection that may be controlled" | "a physical port which directs electrical signals from the communications unit to the target that control a desired action on the target" |

Defendants assert that Plaintiff's proposed construction is erroneous because it defines "outputs" as "signals" when "outputs" should be construed primarily as structural components, not as signals. The Defendants contend that the intrinsic record and the parties' agreed construction of other terms dictate that "outputs" should be construed as physical structures and not as signals. Defendants' Brief, Dkt. # 22 at 19. However, Defendants' agreement regarding construction of the corresponding terms "inputs to be monitored" and "inputs . . . operable to be monitored" dictates just the opposite conclusion, i.e., that "outputs" be construed as "signals

---

[3] Defendants acknowledge that they initially agreed that the Court could adopt its prior construction of this term, but argue that in light of the Court's "consolidation" of the two cases and vacation of the claim construction in the companion case, and upon conferring with SkyBitz they have decided to adopt the position taken by SkyBitz.

[4] *See* Defendants' Preliminary Disclosure of Proposed Claim Constructions and Forensic Evidence, dated June 5, 2015, which is attached and incorporated herein by reference as Exhibit F, and the Joint Claim Construction and Prehearing Statement, Dkt. #20, and the Exhibit to the Joint Claim Construction, Dkt. # 20-1 at 7-8.

from the communication unit", not physical ports. All of the Defendants, including the ORBCOMM Defendants, have agreed that "inputs" should be construed as "signals to the communication units."[5] Defendants' Brief, Dkt. #22 at 11. If "inputs" are construed as "signals to the communication unit," the term "outputs" must be construed in a consistent manner to mean "signals from the communication unit."

The intrinsic evidence supports the parties' agreed construction of "inputs" and the Plaintiff's proposed construction of "outputs." The Abstract, specification and prosecution history demonstrate that "outputs" include signals. The Abstract states that "[t]he monitoring unit includes an interface with the target or asset to be tracked such that electrical signals may be sent between the target and monitoring unit. . . . [T]he system may respond appropriately to signals having unique meanings from each different monitoring unit." Exhibit A at Abstract. The '686 specification states that "[t]he outputs and inputs are electrical signals that are used with the target and are related to the type of target and may include a wide range of signals." '686 Patent, Exhibit B at 9:53-56. The specification further provides that "[a] plurality of inputs to the monitoring device from the target are provided as well as plurality of outputs from the monitoring device to the target. If the target is a vehicle, then the interface communicates electrical signals relating to one or more elements of the vehicle." Exibit B at 2:24-29.

Defendants point to the figures of the '686 patent and argue that the '686 patent consistently shows the "outputs" as physical elements. Defendants argue that this description of Figure 1 "groups inputs and outputs and describes *physical* devices that are connected to the device": "Digital I/O or interface [40] connects inputs [42], outputs [44] and status signals [46]

---

[5] In the companion case, Defendant SkyBitz's proposed construction of "outputs to be monitored" included "*electrical signal outputs.*" (emphasis added). Case No. 2:14-cv-00665-JRG, *Joseph Smith v. Honeywell International, Inc.*, in the United States District Court for the Eastern District of Texas, Marshall Division, Dkt. #44 at 27-28. In the consolidated case, SkyBitz has agreed that "inputs to be monitored" and "inputs . . . operable for monitoring" should be construed to include "*signals* provided to the wirless communication unit." Dkt. #25 at 10-11. (emphasis added).

to monitoring device [10] preferably via cabling [48].   In a presently preferred embodiment, inputs [42] may include up to four switches, buttons, or sensors." Defendants' Brief, Dkt. #25 at 21 (quoting '686 Patent at 6:60-63).   Here, the Defendants' argument begins to fall apart.  This description shows that inputs, outputs, and status signals are "signals", not ports.  The physical structure, such as the "digital I/O", "interface", "monitoring device," and "sensors" are described elsewhere.  If the ORBCOMM Defendants' proposed construction were correct, there would be no reason to describe and discuss the "interface" and "cabling."

In the Notice of Allowance, the Examiner repeatedly distinguished between "ports," "inputs," and "outputs," confirming that "inputs" and "outputs" are signals to/from the communication unit and not "physical ports".  Exhibit D at 2-3.   For example, the Examiner states that "[t]he 'common database', located at the 'network server' stores, for the one or more 'monitoring devices' and related 'targets' the selectively variable configurations defining the *ports, inputs, and outputs* . . . . The stored information includes: *the selected ports for connections, the inputs/variable to be monitored, and the outputs/items to be controlled.*" *Id.* (emphasis added).  The Examiner also states that "[t]he stored information includes: the selected ports for connections, the inputs/variables to be monitored, and the outputs/items to be controlled."  Exhibit D at 3.   The Notice of Allowance also distinguished the Suman reference by noting that Suman fails to teach the limitations noted in the reasons for allowance, including "a common database, located at the 'network server' that stores, for the one or more 'monitoring devices' and each monitoring device's related 'targets' the selectively variable configurations defining *the ports, inputs, and outputs* in combination along with the other limitations of the independent claims."  Exhibit D at 20 (emphasis added).

Defendants contend that Plaintiff has improperly relied upon "new matter" in claim 51 to support his proposed construction of "outputs to be controlled."   Claim 51 states, "The

monitoring system of claim 48, wherein said one or more outputs to be controlled comprise a power control for said global position sensor, setting a flag in a memory to be operated on by a microcontroller, and controlling said microcontroller to send said location information." Exhibit A at 8:1-5.  Here, claim 51 explicitly describes "outputs" to turn on/off the GPS and "outputs" to reprogram the microcontroller.  "Outputs" can be used to set a flag in the memory device of the communication/monitoring unit.  Exhibit A at 8:1-5.  In other words, "outputs" may give the user the option of controlling components in the monitoring unit as well as components on or near the target.

Defendants contend that "outputs" must be "external to the wireless communications unit."  Defendants' Brief, Dkt. #25 at 28.  This limitation is found nowhere in the '686 patent and nowhere in the specification or prosecution history.  It also leads to absurd results.  The wireless communication unit is a housing that contains various components, such as a GPS, microcontroller, and a wireless transceiver.  Under Defendants' argument, a signal to the GPS for example would not read on the claim if the GPS component was placed inside the communication unit, but it would read on the claim if the GPS were placed outside the communication unit, even if it were attached to the box.

Defendants assert that Plaintiff may not properly rely upon claim 51, which was added in reexamination, because the original written description does not "support the conclusion that 'outputs' are connections that are entirely internal to the communications unit."  The '686 patent specification provides specific support for Claim 51.[6]  For example, the specification states that the "monitoring device 10 may be programmed to control power itself as discussed subsequently

---

[6] A true and correct copy of Plaintiff's Reexam Office Action Response, dated November 11, 2009, filed in *Ex Parte* Reexamination Control 90/009,121 is attached as Exhibit "G" and incorporated herein.  *See* Exhibit G at 14, 18 and 20.  A true and correct copy of Plaintiff's Reexam Office Action Response, dated October 20, 2010, filed in *Ex Parte* Reexamination Control 90/009, 121, is attached as Exhibit E and incorporated herein by reference.  *See* Exhibit E at 42.

so as to further reduce power usage." Exhibit B at 6:29-31. The specification specifically references that the monitoring system can program and control the power to the GPS:

> GPS [56] communicates with microcontroller/CPU [50] and provides location information whenever requested. To save power, microcontroller can place GPS [56] in an idle position by means of GPS power control [58] until a GPS signal is requested by microcontroller [50], which in turn may have been requested from system [100] through pager/modem/pager port [52]. Power control may be effected by a mosfet or other switching device as desired for low cost and reliable operation.

Exhibit B at 9:63-10:4. Claim 51 also references setting a flag in a memory to be operated on by a microcontroller and controlling the microcontroller to send location information." The specification provides the following:

> [A] flag may be set that determine whether or not to save the location data and may typically be set in response to a signal from system [100]. The location data may be logged if desired into memory such as memory [55] if it is desired to save a series of location data. While system [100] can effect logging on any time schedule or in response to events that may occur with respect to inputs, monitoring unit 10 may also be programmed to log data into memory [55] such as events, location data, output signals, and the like.

> Assuming the initialization flag is set, then microcontroller [50] checks to see if flags are set for new messages from system [100], and if so, then the messages are downloaded as indicated at [78].

> If there is a message from the system [100], then it is downloaded and the message is deleted from the list or queue of messages if there is more than one message waiting. Assuming the message makes a valid request or one that is line with the initialization criteria as indicated [84], then the message is executed at [86]. An example might be a message from the system [100] to send location data. In that case, at this time microcontroller would proceed according to programming to poll GPS [56] to obtain an update of the location. As another example, system [100] might send a message that has the effect of unlocking the doors of a vehicle.

Exhibit B at 10:58-67; 11:25-27; and 11:31-41.

**CONCLUSION**

For the foregoing reasons, Plaintiff Joseph Smith respectfully requests that this Court adopt his proposed constructions of the disputed claim terms to the extent constructions are necessary.

Respectfully submitted

ANDERSON & CUNNINGHAM, P.C.

/s/ *David K. Anderson*

_____

David K. Anderson
david@andersonlawfirm.com
SBT No. 01174100
Four Houston Center
1221 Lamar, Suite 1115
Houston, Texas 77010
Telephone: 713-655-8400
Telephone (Direct): 713-655-7665
FAX: 713-655-0260
ATTORNEY-IN-CHARGE FOR
PLAINTIFF JOSEPH SMITH

OF COUNSEL:

ANDERSON & CUNNINGHAM, P.C.

Julie B. Cunningham
julie@andersonlawfirm.com
SBT No. 05240700
Four Houston Center
1221 Lamar, Suite 1115
Houston, Texas 77010
Telephone: 713-655-8400
FAX: 713-655-0260

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that a true and correct copy of the foregoing instrument was filed electronically pursuant to Local Rule CV-5(a) and that a copy of this document was served upon all counsel of record pursuant to the Federal Rules of Civil Procedure and Local Rule CV-5(b)(1) via the Court's CM/ECF on this 20th day of August, 2015.

/s/ *David K. Anderson*

_____

David K. Anderson